# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| THE ILLUSIONS OF THE SOUTH, INC. and ROBERT MASON, | : |
| Plaintiffs, | : |
| v. | : Civil Action No. 7:07-cv-6 (HL) |
| CITY OF VALDOSTA, STEVE FINLEY, LESLIE MANNIHAN, FRANK SIMONS, TERRY GRIFFIN, and TONY BRANHAM, | : |
| Defendants. | : |

# ORDER

This matter is before the Court on the renewed Motion for Summary Judgment of Defendants City of Valdosta, Leslie Manahan, and Frank Simons[1] (Doc. 79). In their motion, Defendants contend they are entitled to judgment as a matter of law as to all claims against them. After review of the pleadings and the discovery and disclosure materials on file, the Court grants the motion of Defendants.

## I.    BACKGROUND

Plaintiffs filed their initial complaint in this Court on January 17, 2007. At that time, they named as Defendants, the City of Valdosta, Leslie Manahan, and Frank

---

[1] The City of Valdosta, Leslie Manahan, and Frank Simons are referred to collectively as "Defendants" or "City Defendants" for purposes of this Order.

Simons. They also named Terry Griffin and Steve Finley[2] as defendants, and later amended their complaint to add Tony Branham as a defendant. Plaintiffs allege that all of the defendants, collectively, began a campaign to drive Illusions of the South, a Valdosta nightclub, out of business. They maintain that beginning as early as 2003, the defendants, again collectively, used various legal and procedural tools to shut the nightclub down, including making allegations of fire code violations and liquor law violations.

Defendants Griffin and Branham, who were Lowndes County Sheriff's deputies, previously filed a motion for summary judgment. Plaintiffs filed a motion for summary judgment as well, which was limited to the claims against Griffin and Branham. In an order entered on March 30, 2009 (Doc. 75), the Court denied Plaintiffs' motion and granted, in part, and denied, in part, Griffin and Branham's motion. The Court granted summary judgment in Griffin and Branham's favor for events occurring on January 13, 2005, as those events were barred by the statute of limitations, but denied summary judgment for claims arising out of events which occurred on January 22, 2005.

Plaintiffs allege a number of claims, based in both federal and state law, against the City Defendants. They contend that Defendants violated their Equal Protection, Procedural Due Process, and Substantive Due Process rights under the Fourteenth Amendment, and also violated state law by interfering with Plaintiffs' prospective economic advantage. Defendants raise a number of defenses in their motion for

---

[2]Finley was dismissed as a party on March 30, 2009 (Doc. 76).

summary judgment, including a statute of limitations bar, lack of standing of Plaintiff Mason, qualified immunity, and official immunity. Defendants also argue that Plaintiffs have not presented the evidence necessary to sustain their claims.

## II.  ANALYSIS

### A.  Plaintiffs' state law claim - City of Valdosta

Plaintiffs' state law claim against the City for interference with prospective economic damage is easily resolved, as Plaintiffs concede that the City has immunity from the state law claim. Accordingly, Defendants' motion for summary judgment as to the state law claim against the City is granted.

### B.  Plaintiffs' federal law claims - Statute of limitations

While it is not completely clear, it also appears that Plaintiffs concede that their federal claims against Defendants are barred by the statute of limitations.[3] Nevertheless, the Court will examine this issue in more detail to ensure it is disposed of properly.

"'Federal courts apply their forum state's statute of limitations for personal injury actions to actions brought pursuant to 42 U.S.C. § 1983.'" Lovett v. Ray, 327 F.3d

---

[3]Plaintiffs' response to Defendants' motion reads in pertinent part:

> Plaintiffs previously argued that the concerted action of both Valdosta and Lowndes County Officers put their case within the two year statute of limitations. Given the Court's ruling that the two searches of Lowndes County Officers are not part of one whole, Plaintiffs believe they are foreclosed from arguing the statute of limitations question herein under federal law.

(Doc. 87, p. 1).

1181, 1182 (11th Cir. 2003) (citation omitted). Georgia's statute of limitations for personal injury actions is two years, making the statute of limitations for a § 1983 claim two years as well. Id.

According to Plaintiffs, the nightclub operated until January 22, 2005, and officially closed on February 5, 2005. This case was filed on January 17, 2007. Plaintiffs contend that the defendants collectively shut the nightclub down in September and October of 2003, June, July, August, September, October, November, and December of 2004, and January of 2005. The Court, however, has already determined that there is no evidence to support a claim that the City Defendants (Manahan, Simons, and the City) conspired with the Lowndes County Defendants (Griffin and Branham) to close the nightclub. The January, 2005 allegations relate only to the Lowndes County Defendants, which means that the last possible date the City Defendants could have violated Plaintiffs' rights was December 31, 2004. In order to determine whether Plaintiffs' federal claims against the City Defendants are barred by the statute of limitations, the Court must examine the record to determine the last day the City Defendants took any allegedly improper action against Plaintiffs.

On August 19, 2004, the City adopted an alcohol ordinance, Ordinance No. 2004-35, which established a 2:00 a.m. last call and 2:30 a.m. closing time for business establishments whose primary business or purpose was the sale of alcoholic beverages.[4] The 2:30 a.m. closing time initially did not apply to restaurants, hotels or

---

[4] The City previously had a 3:00 a.m. last call and no closing time. During its first two years of operation, the nightclub's general closing time was 6:00 a.m.

4

motels, or other businesses whose primary sales were derived from products or services other than alcoholic beverage sales.[5] The ordinance was subsequently amended on October 21, 2004, to require the closing of entertainment establishments[6] between the hours of 2:00 a.m. and 10:00 a.m. regardless of whether they also qualified as a restaurant under the ordinance.[7]

---

[5]Section 7-1034 of the ordinance provided in pertinent part:

(a) No license holder shall sell, give away or otherwise dispense any alcoholic beverages between the hours of 2:00 A.M. and 10:00 A.M. according to the standard time in effect at the time the sale or other dispensing of alcoholic beverage occurs on any day of the week except as otherwise provided for in subsection (c) of this code section. The sale of or dispensing of alcoholic beverages shall be permitted on Sunday between the hours of 12:01 A.M. and 2:00 A.M.

(b) No customer or other person not employed by the business establishment shall be permitted to remain on the premises of any establishment whose primary business or purpose is the sale of alcoholic beverages later than 2:30 A.M. and employees must depart the establishment building by 3:30 A.M.; however this subsection shall not apply to restaurants, motels and hotels, or other businesses whose primary sales, and the majority of it's [sic] business income is generated by products or services other than alcoholic beverages sales. If an "entertainment establishment" as defined in section 7-1035(d) has unique circumstances as a result of the load-in or load-out of entertainers, they may request additional time, specifically for this purpose only, by directly contacting the Valdosta Police Department, who may not unreasonably refuse such a request if conditions are verified and warranted.

[6] An "entertainment establishment" is defined as "any business licensed by the City as a retail liquor or beer dealer and in which also provides live music or provides pre-recorded music for the purpose of dancing, or provides entertainment such as, but not limited to dancers, comedians, karaoke, performers or other like or similar entertainment." Ordinance 2004-35, Section 7-1031(d).

[7]Ordinance No. 2004-43 revised Section 7-1034 to read as follows:

(b) No customer or other person not employed by the business establishment shall be permitted to remain on the premises of an entertainment establishment

As for Manahan and Simons, both of whom are members of the Valdosta Police Department, their contact with Plaintiffs ended in 2004. Manahan's last encounter with Plaintiffs was on October 16, 2004. Simons' last contact with Plaintiffs was on or about November 22, 2004. The last contact Plaintiffs had with any City official was on November 26, 2004, when the Valdosta Police Department closed the nightclub because of overcrowding and blocked exits. Even giving Plaintiffs the benefit of the doubt and using December 31, 2004 as the relevant date, the last day for filing § 1983 claims would be December 31, 2006. A complaint filed on January 17, 2007, would not be timely as to the claims occurring on December 31, 2004, much less August 19, October 16, October 21, November 22, or November 26, 2004. Indeed, Plaintiffs do not dispute Defendants' statement of material fact that "[a]ll events complained of by Plaintiffs occurred more than two years prior to the filing of the instant complaint."

---

or any establishment whose primary business or purpose is the sale of alcoholic beverages later than 2:30 A.M. and employees must depart the establishment building by 3:30 A.M. If an "entertainment establishment" as defined in section 7-1035(d) has unique circumstances as a result of the load-in or load-out of entertainers, they may request additional time, specifically for this purpose only, by directly contacting the Valdosta Police Department, who may not unreasonably refuse such a request if conditions are verified and warranted. This section shall not apply, however, to restaurants, motels and hotels that are not designated as an entertainment establishment, as defined in this ordinance, and whose primary sales and the majority of its business income is generated by products or services other than alcoholic beverages sales. Any business licensed to provide alcoholic beverages by the drink and designated as an entertainment establishment shall comply with the closing times established in the ordinance for entertainment establishments regardless of any other business product or service they may provide, including service as a restaurant or food services. Provided however under no circumstances shall any business establishment sell alcoholic beverages later than 2:00 A.M. or as provided in subsection (c) hereof.

(Doc. 81, ¶ 60). Accordingly, Plaintiffs' federal claims against Defendants are barred by the statute of limitations, and the City, Manahan, and Simons are entitled to judgment as a matter of law on Plaintiffs' Equal Protection, Procedural Due Process, and Substantive Due Process claims.

### C.   Plaintiffs' state law claims - Manahan and Simons

The only remaining issues for the Court to consider are Plaintiffs' state law interference with prospective economic damage claims against Manahan and Simons.

A state law claim for interference with prospective economic advantage is typically treated as one for tortious interference with potential business relations. *See* Crane v. Albertelli, 264 Ga. App. 910, 911, 592 S.E.2d 684, 685 (2003) (construing claim labeled as claim for "unlawful interference with prospective economic advantage" as a claim for tortious interference with potential business relations). The elements of tortious interference with potential business relations are: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff. Northeast Georgia Cancer Care, LLC v. Blue Cross & Blue Shield of Georgia, Inc., 297 Ga. App. 28, 33, 676 S.E.2d 428 (2009).

Manahan and Simons contend they are entitled to summary judgment on Plaintiffs' state law claims because they have official immunity. They assert that their

actions regarding the nightclub were discretionary in nature and that there is nothing in the record to suggest they acted with actual malice or an intent to injure.

A suit against a governmental employee sued in his individual capacity "is barred by official immunity where the public official has engaged in discretionary acts that are within the scope of his or her authority, and the official has not acted in a wilful or wanton manner; with actual malice; or with the actual intent to cause injury." Brown v. Penland Constr. Co., 281 Ga. 625, 625-626, 641 S.E.2d 522, 523 (2007). Plaintiffs do not contest that Manahan and Simons were engaging in discretionary acts, which means that Plaintiffs must now show that Manahan and Simons acted in a wilful or wanton manner, with actual malice, or with actual intent to cause injury.

"Actual malice" means "a deliberate intention to do wrong, and does not include 'implied malice,' i.e., the reckless disregard for the rights or safety of others." Murphy v. Bajjani, 282 Ga. 197, 203, 647 S.E.2d 54, 60 (2007). A "deliberate intention to do wrong" is "the intent to cause the harm suffered by the plaintiffs." Id. Finally, "actual intent to cause injury" means "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." Kidd v. Coates, 271 Ga. 33, 518 S.E.2d 124 (1999) (internal quotation marks omitted).

Plaintiffs contend that the issue of official immunity is a question for the jury. In support of their argument, Plaintiffs fall back on a 2004 decision from this Court in the case of Herbie's Hideaway, LLC v. City of Remerton, Case No. 7:02-cv-51 (M.D.Ga.). That case also involved the decline and eventual closing of a tavern due to alleged police harassment. The individual defendant police officers moved for summary

judgment on the plaintiffs' state law claims on the basis of official immunity. This Court determined that there was a jury issue with respect to the officers' entitlement to official immunity, stating that

> Even legitimate law enforcement activity can become oppressive if performed repeatedly and in an unnecessarily intrusive fashion. Here, a jury could find that otherwise legitimate law enforcement activities, such as roadblocks and drive throughs, were handled in a malicious fashion, or had become so intrusive as to be oppressive. Furthermore, the jury could find that other police activities, such as requiring identification from patrons, was undertaken without authority of law.

(Doc. 47, November 1, 2004).

Plaintiffs here contend that the City of Valdosta Police Department, Valdosta Fire Department, and Lowndes County Sheriff's Office acted in concert to harass Plaintiffs, engaging in tactics such as issuing citations, having a strong police presence in the area, performing excessive walkthroughs, shutting down the business, and making unfavorable policy decisions. Plaintiffs want the Court to look at the "collective malicious intent" of these three governmental entities and their employees to find that Manahan and Simons are not entitled to official immunity at the summary judgment stage.

As previously discussed in this Order and the Court's order on Griffin and Branham's motion for summary judgment, there is no evidence that the City Defendants conspired with the Lowndes County Defendants. The Court is not going to treat the actions of the City and County Defendants separately for statute of limitations purposes

but collectively for official immunity purposes. Thus, the Court must look only at the actions taken by Manahan and Simons in this case.

Viewing the facts in the light most favorable to Plaintiffs, on October 15, 2004, Manahan and Lieutenant Raymond Conner entered the nightclub to see if it was complying with the City's new alcohol ordinance. Conner was Manahan's supervisor at the time. The officers instructed the DJ to turn off the music and told Mason that because of the ordinance, he needed to close the club and have everyone vacate the premises. Mason complied with the instructions. Conner directed Manahan to write Mason a citation for serving alcohol after hours, which she did. Next, on October 16, 2004, Manahan and other police officers, including a K-9 unit from the sheriff's department, gathered in the parking lot of the shopping center where the nightclub was located. Manahan did not enter the nightclub that night. After she was approached by Mason in the parking lot, Manahan informed Mason that if the nightclub was not cleared out by 2:30 a.m., she would arrest him for violating the alcohol ordinance, as she had given him a citation the previous night. Again, Mason complied with her instructions and closed the nightclub. Those two events are the extent of Manahan's contact with Plaintiffs.[8]

---

[8] Mason testified in his deposition that Manahan returned to the nightclub on November 22 or 23, 2004, and told patrons to leave the parking lot. This testimony is based not on Mason's personal knowledge, but solely on hearsay, which is not admissible to defeat summary judgment. See Kirkland v. Tamplin, 285 Ga. App. 241, 244, 645 S.E.2d 653 (2007) (stating that self-serving hearsay has no probative value on summary judgment).

In March of 2004, Simons, who is the Chief of Police, approached Mason in the nightclub to inquire about why the business was kept open until 6:00 a.m. Simons suggested that Mason start closing at 3:30 a.m., and Mason agreed to do so on the condition that he could hire police officers to work the front door and help disperse the crowd safely. Simons agreed with the request, but according to Mason, the officers did not show up to work as off-duty security. Simons and Mason met again in October or November of 2004 to discuss Mason's plan to serve late night food. Simons inspected the premises in November of 2004 and determined that Mason met the minimum requirements for a restaurant. This was the last contact Simons had with Plaintiffs. Mason alleges that Simons did not inform his officers that the business should be allowed to operate past the 2:30 a.m. closing time for entertainment establishments. There were not, however, any other incidents with the Valdosta Police Department after the November, 2004 meeting with Simons. Finally, Mason contends that Simons made an administrative decision not to follow up on racial comments allegedly made by a member of the Valdosta Police Department regarding the nightclub's clientele.

The Court finds that Manahan and Simons are entitled to official immunity on the state law claims.[9] Their actions certainly do not rise to the level of the Herbie's Hideaway officers' alleged actions. The evidence in the record does not support

---

[9] Even if Manahan and Simons were not entitled to official immunity, Plaintiffs have not pointed to sufficient evidence in support of their claims for tortious interference with potential business relations. Plaintiffs have presented no evidence that Manahan or Simons induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with Plaintiffs. Without evidence to support that element, Plaintiffs' claims fail.

Plaintiffs' contentions that Manahan and Simons acted with the requisite malice needed to overcome official immunity. Even assuming Manahan and Simons bore ill will toward Plaintiffs for whatever reason, "[a]ctual malice requires more than harboring bad feelings about another. While ill will may be an element of actual malice in many factual situations, its presence alone cannot pierce official immunity; rather, ill will must also be combined with the intent to do something wrongful or illegal." Adams v. Hazelwood, 271 Ga. 414, 415, 520 S.E.2d 896 (1999). As Plaintiffs have not produced evidence from which a reasonable jury could infer that Manahan or Simons had a deliberate intention to do wrong, Manahan and Simons are shielded by official immunity from Plaintiffs' state law claim. Manahan and Simons are entitled in their individual capacities to summary judgment as to Plaintiffs' state law claims.

### III.   Conclusion

Consistent with the foregoing, Defendants' Motion for Summary Judgment (Doc. 79) is **GRANTED.** This case shall move forward to trial on the remaining claims against Defendants Griffin and Branham.

**SO ORDERED**, this the 21st day of July, 2009.

*s/  Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

mbh